No. 15,192.

BOWSER, DOING BUSINESS AS BOWSER-RODERICK CO. *v.* UNION BAG COMPANY, INC.

(149 P. [2d] 800)

Decided May 8, 1944. Rehearing denied June 19, 1944.

Mr. ROBERT G. SMITH, for plaintiff in error.

Mr. WILLIAM R. KELLY, Mr. E. TYNDALL SNYDER, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS case involves a dispute concerning ownership and sale of several thousand burlap potato bags. Suit was brought by defendant in error, Union Bag Company, against plaintiff in error, C. Spencer Bowser, doing business as Bowser-Roderick Company, for the unpaid balance of an account allegedly owing by Bowser to the Union Bag Company. Trial was to the court without a jury, and judgment was for plaintiff, as prayed. Bowser seeks reversal. Reference will be made to the parties as they appeared below, or by name.

The parties involved are: Boam, manager of the Union Bag Company, located at Idaho Falls, Idaho;

Jones, who, prior to September, 1939, was an independent potato dealer, located near Idaho Falls, and who had an office in the Union Bag Company building; and Bowser, a potato dealer of Eaton, Colorado.

The pertinent facts as they appear in the record are: In September, 1939, Bowser employed Jones to act as his agent, obtaining an Idaho broker's license for him; Bowser rented a warehouse at Ammon, about six miles from Idaho Falls, and set Jones up in business therein as his agent; at the time of this arrangement Jones had in his possession forty-eight bales of bags, to some of which he had title, the others belonging to Bowser; at this time Jones was indebted to plaintiff in the sum of approximately $1,000; plaintiff company is managed and operated by Boam; Jones arranged with Boam to have the above-mentioned forty-eight bales of bags stored in plaintiff's warehouse, and Jones agreed, as plaintiff avers, to apply the money received from the sale of the bags toward the payment of his account with plaintiff; at least half of these bags were the property of Bowser, i.e., bags that Bowser had purchased from the Bemis Bag Company and which he had forwarded to Jones. However, there was no segregation of the bags in plaintiff's warehouse.

As the shipping season progressed, and need arose, Jones would tell Boam personally that he wanted some bags, or call him on the 'phone and order them, and they would be delivered at Bowser's warehouse in Ammon where one of Bowser's employees receipted for them. Invoices on the deliveries usually followed in a day or two and payment was regularly made by checks signed by Jones and drawn on the Bowser-Roderick account in the Idaho Falls Bank. In November, 1939, Jones ordered twenty-one bales of the bags to be delivered by plaintiff, without charge, to Bowser, explaining to plaintiff that an adjustment had been agreed upon between himself and Bowser. Whenever Jones made payment for bags for which invoices had been

made, he always instructed Boam to credit his account with the same and transfer the charge to Bowser. Sometime later, Mrs. Bowser, who acted as bookkeeper for her husband, apparently became suspicious that Bowser was purchasing bags that he owned, and which he had purchased from the Bemis Company, and for which he had already paid. Acting upon that suspicion she went to Idaho Falls in January to investigate the matter. She testified that she told Boam's bookkeeper that her husband was paying for his own bags, but there is no evidence that she protested to Boam. At that time the Bowser-Roderick Company account was paid in full to December, 1939. Bowser demanded that Jones deliver to him the remainder of his (Bowser's) bags, and on or about February 3, Jones ordered them delivered, invoice for the same being rendered as usual. It was the refusal of Bowser to pay the amount of this last invoice, together with the preceding December balance, that prompted the filing of this legal action.

It may be conceded that at least some of the bags designated in the last few invoices were those purchased from the Bemis Company, and, hence, already were the property of Bowser. However, in order to prove this fact it was necessary for defendant to show how the bags came into Jones' possession. To refute this evidence, counsel for plaintiff offered evidence showing that Jones did possess a number of Bowser-Roderick bags which he had purchased from Ames Harris Bag Company in Portland, and that these bags were the ones he had delivered in November, and for which no charge was made. These bags the trial court found were the "equivalent" of the ones for which charge was made under the last invoices, and, consequently, allowed plaintiff to recover, stating that if Bowser had any grievance he must look to his agent, Jones, for relief.

Predicated upon his twenty-two points specified as grounds for reversal, defendant contends: 1. Plaintiff

was not entitled to recover under the complaint. 2. The evidence is insufficient to support the judgment. 3. The equivalent-value theory was erroneous. 4. The trial court misconceived the law of (a) agency, (b) account stated, and (c) estoppel.

■ 1. Defendant's argument on the pleadings is, that the amended complaint as filed sets out the invoices, Exhibit A, under which payment was sought, and that plaintiff's recovery should be limited by such invoices, and since they covered the Bemis Company bags belonging to defendant, plaintiff was bound by his complaint. However, since the answer does not deny receipt of the bags covered by these invoices, and it was proven that they were delivered, and since the answer alleges fraud on the part of Boam, and mistake or inadvertance on the part of Jones, the trial Court was acting well within his authority in hearing the whole matter. Assuming that he was correct in applying the "equivalent-value" theory, plaintiff was entitled to recover on his complaint the amount established by its proof. In any event, the issues were developed by the amended complaint and answer, and we think there was no such violation of any of the rules of pleading as would prejudice the defendant.

■■ 2. The principal contention of counsel for defendant on the point of insufficiency of the evidence, is, that even under Boam's testimony, plaintiff is not entitled to any judgment except for $180, which amount defendant confesses is owing, and counsel argues strenuously that there is no conflict in the evidence, and no evidence upon which any proper judgment in excess of the amount confessed to be due can be based. A partial answer to this contention is, that respective counsel devote a large part of their briefs to an explanation of what the evidence shows, as they view it, and these views cannot be reconciled. From the record it appears beyond question that Jones did have several bales of bags, to which he had title, as

counsel for defendant admits, which bags were in plaintiff's warehouse, and that at the conclusion of the various transactions defendant had received and used all of the bags belonging to either Jones or Bowser, so there were none left in the warehouse. None of the bags were segregated, and while Boam knew that some of them belonged to Bowser, when Jones told Boam that an adjustment had been made between him (Jones) and Bowser, Boam was justified in believing that all the remaining bags were subject to Jones' exclusive order. Certainly the official certificate of the State of Idaho is convincing evidence of the agency, and there is nothing in the record to indicate any limitation of that agency by Bowser. Authorities upon which counsel for defendant rely, to the effect that an agent cannot sell his principal's property, are not in point under the facts in this case, where the ostensible control, if not ownership of all, and admitted ownership of some, of the bags was in Jones. As to the admission of certain exhibits, objected to by defendant, we think there was no error, because when defendant introduced his exhibits showing the source of purchase of the Bemis Company bags, Boam was entitled to show the source of purchase of the Jones' bags, even though both exhibits antedated the invoices upon which they relied. It was defendant that opened up the entire account, and plaintiff's challenged exhibits were material thereto. Finally, on the evidence, it must be borne in mind that under the established rule the matter of the credibility of witnesses and the weight to be accorded their testimony is for the trial court.

3. Counsel for defendant contends that there is no basis for the "equivalent-value" theory upon which the trial Court admittedly based his judgment. This presents for technical analysis the status of the bags involved. However, defense counsel concedes that Jones had title to the twenty-one bales which he describes as "dumps" and that the equivalent-value theory could re-

late to the "dump" bags. These "dumps" were also described as "unmugs," i.e., sacks cut a little longer so that the "mug" or tops could be sewn. The "mugs" were left open to afford a better opportunity for inspection. It was claimed by both Mr. and Mrs. Bowser that the "unmugs," which they say were received on the transfer, were no longer popular in the Idaho territory and were therefore not of equivalent value. Assuming this to be true, that fact was never communicated to Boam and while the delivery receipts do show some were "mugs" (The Bemis bags which Bowser claimed were his were all "mugs") and others "unmugs," there is a difference of only one-half ounce in weight, the "mugs" being the heavier. Mrs. Bowser finally agreed: "We still have little use for that bag and I think we used it for convenience, what you call that dump, I believe you call it." And when the trial court asked Jones, "Is it the equivalent, is it of equal grade and value to those bags that had the Eaton, Colorado, address [i. e. Bemis bags] on it?' " he answered: "They would be about the same." Nothing in the record indicates that the "equivalent" bags were damaged in any way or inferior in quality to the Bemis Company bags. There was no error in the Court's resolution of this point.

■ ■ 4. We do not think the trial Court misconceived the law of agency as applied to the facts in this case. That Jones was Bowser's agent is too clear for argument. To escape the legal effect of the relationship, it was incumbent on defendant to show somewhere in the course of the proceedings that Boam knew, or was charged with notice, that Jones was acting without the scope of his authority as agent in taking credit for bags owned by Bowser. It is asserted that this was done by showing that on Mrs. Bowser's visit to Boam's office in January she talked to one of his employees, and that she allegedly protested the account to him, and that he was Boam's agent. On that point defense counsel frankly

says he did not know whether that employee was a qualified agent.

We think the conduct of the parties here satisfies the rules relied upon by defendant: First, "The liability of the principal is determined * * * not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent." 2 C.J. 574 §214. Second, "The acts of an agent assuming to have authority to sell his principal's personal property will not bind the principal unless he has actually given the agent such authority, or has held him out to the public as clothed with it." 2 C.J. 592, §229.

■ 4. (b) We think this was an account stated. During the running of the account a total of twenty-eight invoices were rendered and all were paid in due course, except the balance struck at the instance of Jones when he requested the delivery of the remainder of the bags. This satisfies the rule quoted by defense counsel: "For that purpose [to make an account stated] there must be * * * evidence to show that the party sought to be charged has by his language or conduct admitted the correctness of the account." 1 C.J. 680, §251. In *Freas v. Truitt*, 2 Colo. 489, the Court instructed the jury: "There can be no account stated to be taken as a settled account until the final closing of the entire matter and the striking a balance, and if a final account is tendered and no objection is made within a reasonable time, it may be taken as correct and treated as an account stated." Inferentially we approved this instruction, saying: "No error is perceived in the instructions given by the court." Boam was not advised of the protest here until March 14, 1940, over six weeks after Mrs. Bowser says she learned what had happened, and over five weeks after the last invoice was sent. The trial Court properly treated this as an account stated.

4. (c) As to whether the Court misconceived the law of estoppel, we deem it unnecessary to decide, for in ruling on the motion for a new trial he based his conclusion on Boam's lack of notice of any alleged limitation of Jones' agency.

We conclude that the record does not disclose any reversible error.

Judgment affirmed.

MR. CHIEF JUSTICE YOUNG and MR. JUSTICE BURKE concur.