565 P.2d 972 (1977)
Doreen M. RUSSELL and Phillip Niernberg, Plaintiffs-Appellees,
v.
FIRST AMERICAN MORTGAGE COMPANY, a Colorado Corporation, Defendant-Appellant.
No. 76-555.
Colorado Court of Appeals, Div. II.
May 26, 1977.
*973 Meer, Wolf & Slatkin, P. C., Walter Slatkin, Denver, for plaintiffs-appellees.
*974 Hornbein, MacDonald & Fattor, Donald P. MacDonald, Denver, for defendant-appellant.
ENOCH, Judge.
Defendant, First American Mortgage Company (American), appeals a jury verdict and judgment entered against it and in favor of plaintiffs, Doreen M. Russell and Phillip Niernberg. We affirm.
Plaintiffs negotiated with David Schrader, a loan officer for American, for longterm financing for a warehouse which plaintiffs had constructed. American did not loan funds itself, but acted as a broker by matching borrowers with potential lenders. It was established that Schrader orally informed plaintiffs that American had obtained a loan for the warehouse from Capitol Life Insurance Company for $110,000 payable over 25 years at an interest rate of 9 1/4%.
As a result of this information, plaintiffs prepared a written loan application and various financial statements, and obtained an appraisal of the property which cost them $350. They also agreed to pay American a $2,200 commission and gave a promissory note for the first half of this commission at the time the application and commission agreement were signed. The loan was not forthcoming and after Schrader and Gary Spinkalink, the executive vice president of American, had given several assurances that the application was being processed, Schrader finally admitted to plaintiffs that the loan application had never been submitted to Capitol Life, and that, because of rising interest rates, no loans were available at 9 1/4%. American then returned plaintiffs' promissory note. Plaintiffs subsequently secured another loan through a different source for $100,000, amortized over 25 years, at an interest rate of 10%, and with a required balloon payment of the unpaid balance after 20 years.
Plaintiffs claimed that, as a result of American's misrepresentations, they had, in the face of rising interest rates, refrained from seeking other financing for several weeks. Plaintiffs asserted and established as their measure of damage the additional interest of $49 per month or $11,760 over 20 years, which they were required to pay on the loan they actually obtained. The jury awarded plaintiffs $5,000.

I.
American contends that the proper measure of damages is the difference between the market value of the property when subject to a 10% loan, and the market value when subject to a 9 1/4% loan, and that it was error to have admitted in evidence the additional interest as the measure of damage. We do not agree.
Regardless of the effect, if any, that a defendant's fraud has on property value, the defrauded party may recover any additional damages which are a natural and proximate consequence of the defendant's misrepresentations. McNeill v. Allen, 35 Colo.App. 317, 534 P.2d 813; Stamp v. Rippe, 29 Colo.App. 185, 483 P.2d 420. An increase in the interest rate a borrower will have to pay as a result of delay in securing a loan occasioned by a defendant's fraud is a proper element of the damages to be awarded. McNeill v. Allen, supra. Therefore, we hold that the increased interest was a valid measure of damages in this case.
As to proof of damages, American claims that these damages are speculative and uncertain because the building could be sold at any time and thus terminate plaintiffs' obligation for payment of interest before the 20-year period had run. The rule which precludes recovery of uncertain and speculative damages applies only to situations where the fact of damage is uncertain, not where the amount is uncertain. Peterson v. Colorado Potato Flake & Mfg. Co., 164 Colo. 304, 435 P.2d 237. Here, plaintiffs established that they were damaged. It was, therefore, for the jury to establish the amount of damage, and the evidence amply supports the award made.
Contrary to American's other argument, the increase in interest costs was a *975 natural and probable consequence of the delay caused by its fraud, and the rise in interest rates during this delay was entirely foreseeable to American, as it was continually procuring loans for other clients during this period.

II.
American also contends that it was error to receive in evidence hearsay statements written by Schrader in which he admitted advising plaintiffs that he was able to get the loan at a time when American in fact had not applied for such a loan.
At trial, American objected to this evidence only on the grounds that it was "cumulative." It did not object on the grounds of hearsay, and in the absence of an objection on this ground the admission of this evidence, even if erroneous, is not now reviewable on appeal. Jakway v. Rivers, 48 Colo. 49, 108 P. 999. Furthermore, although the statements were hearsay, they were admissible against American since the statements were made by American's agents while those agents were acting within the scope of their employment. Westland Distributing, Inc. v. Rio Grande Motorway, Inc., Colo.App., 555 P.2d 990.

III.
American next argues that the court erred in refusing to give its tendered instruction that fraud cannot be predicated on statements which are promissory in nature. We find no error in this ruling because we are not concerned here with a promise. The misrepresentation alleged was that "[d]efendant had obtained a permanent loan on plaintiffs' property. . . ."
The jury was correctly instructed under the facts of this case that in order for plaintiffs to recover they had to establish that American made a false representation of a past or present fact. See United Fire & Casualty Co. v. Nissan Motor Corp., 164 Colo. 42, 433 P.2d 769. The jury was further instructed that "a false representation of a past or present fact is any words or conduct which create an untrue or misleading impression of the actual past or present fact in the mind of another." See Colo.J.I. 19:3. Since the jury was correctly and adequately instructed as to the applicable law, there was no error in rejecting the tendered instruction. Arapahoe Basin, Inc. v. Fischer, 28 Colo.App. 580, 475 P.2d 631.

IV.
American also asserts that it is not liable because Schrader and Spinkalink did not have authority to make the statements which they did to plaintiffs. Further, American claims there was no ratification of these employees' conduct. We disagree.
An employee is acting within the scope of his employment if he is engaged in the work which has been assigned to him by his employer, or is doing what is necessarily incidental to the work which has been assigned to him or which is customary within the business in which the employee is engaged. Hynes v. Donaldson, 155 Colo. 456, 395 P.2d 221; Cooley v. Eskridge, 125 Colo. 102, 241 P.2d 851. Additionally, even if an employee does not have actual authority to take certain action on the principal's behalf, a principal who by his words or conduct has caused another reasonably to believe that the principal has authorized his agent to take that action is liable under the doctrine of apparent authority as if the action were authorized. See Bowser v. Union Bag Co., 112 Colo. 373, 149 P.2d 800.
Here, there was ample evidence to find that American's agents were acting within the scope of their employment, or at least within the scope of their apparent authority. Schrader was denominated as a loan officer by American, and was the only person with whom plaintiffs dealt. The jury could have concluded on the evidence presented that Schrader was the conduit for all information passing between American and plaintiffs and that conveying information about the status of plaintiffs' loan was a usual or necessary incident to his employment. Furthermore, Spinkalink ratified Schrader's statements in a telephone conversation *976 with plaintiffs, and since he was second-in-command with general authority over the office, was acting within the scope of his employment by conveying information about the loan.
Judgment affirmed.
SILVERSTEIN, C. J., and RULAND, J., concur.